590 A.2d 832

**Michael J. WICKS, Appellant,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION and Lower Salford Township and Harry T. Wentz, Wentz Bros., William G. James and Leila L. James, Appellees.**

Commonwealth Court of Pennsylvania.

Argued March 4, 1991.

Decided April 26, 1991.

Michael G. Trachtman, Powell, Trachtman, Logan and Carrle, King of Prussia, for appellant.

Robert L. Gallagher, Deputy Atty. Gen., Norristown, for appellee, Dept. of Transp.

Bruce S. Pancio, Roeger, Walker & Bahls, Perkasie, for appellee, Lower Salford Tp.

Frederick T. Lachat, Jr., Gallagher, Reilly and Lachat, Philadelphia, for appellee, Wentz Bros, Inc.

Before DOYLE and KELLEY, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Michael J. Wicks (Appellant) is appealing a decision of the Montgomery County Court of Common Pleas, wherein the trial court denied Appellant's Motion for Post–Trial Relief. We affirm.

On June 16, 1983, Appellant was driving his motorcycle in a southerly direction on state highway Route 113 in Lower Salford Township (Township), Montgomery County.[1] Immediately prior to Route 113's intersection with the Township's Hoffman Road, which was located on his right, Appellant lost control of his motorcycle. He was traveling at an approximate speed of fifty-five miles per hour, even though the posted speed limit on Route 113 was forty-five miles per hour, with a thirty-five miles per hour advisory sign near the curve. Consequently, the rear wheel of Appellant's motorcycle slipped off of the road and the front one remained on the road.

In an effort to regain control of the motorcycle and to avoid a bank of four or five mailboxes located near the apex of the curve and adjacent to the paved surface of Route 113,[2] Appellant turned his front wheel off of the paved surface and chose to traverse the area of loose stones behind the mailboxes. Once again in control of his motorcycle, Appellant then chose to cross Hoffman Road and to negotiate a two to two-and-one-half foot embankment on the far side of that road, instead of proceeding down that road and back on to Route 113. Appellant hit the embankment, and he was rendered paraplegic as a result of the accident.

After an eight-day bifurcated trial, the jury returned a verdict apportioning negligence as follows:

| | |
|---|---|
| Appellant | 57% |
| Department | 28% |
| Township | 15% |
| Wentz Brothers | 0% |

■ Here, Appellant is requesting that we reverse the trial court's August 21, 1990 order denying his motion for post-trial relief and grant a new trial. We note that "the disposition of post-trial motions is for the sound discretion of the trial court." *Department of Transportation v. Consolidated Rail Corp.* 102 Pa. Commonwealth Ct. 611,

---

1. Because Route 113 is a state highway, the Department of Transportation (Department) has responsibility for it.

2. Appellant sued the Wentz Brothers as the parties who constructed the mailboxes and placed them so close to the road.

613, 519 A.2d 1058, 1059 (1986). Additionally, we are mindful that "under our scope of review of new trial motions, the common pleas court's ruling will not be reversed absent an error of law controlling the outcome of the case or an abuse of discretion where the ruling turns on the weight of the evidence." *Id.*, 102 Pa.Commonwealth Ct. at 613–14, 519 A.2d at 1059.

Appellant asserts that the trial court made the following errors:

(1) It precluded evidence as to prior accidents;

(2) It permitted the Department's motorcycle expert to testify beyond the scope of his expertise;

(3) It permitted the eyewitness to estimate Appellant's speed; and

(4) It charged the jury with respect to the "assured clear distance ahead" rule (rule).[3]

We will address each of the trial court's alleged errors in turn.

### Preclusion of Evidence as to Prior Accidents

Both the Township and the Wentz Brothers filed Motions in Limine. Therein, they sought to preclude evidence of statements about prior accidents without explanation of whether the accidents were sufficiently similar.

In proceedings held in the trial court's chambers, but still on the record, the trial court stated that although it was granting Appellees' Motions in Limine to preclude evidence of potentially dissimilar prior accidents, Appellant could still present evidence if he laid a foundation with regard to the similarities of any accidents. The trial court relied on the case of *Whitman v. Riddell*, 324 Pa.Superior Ct. 177, 471 A.2d 521 (1984).

In *Whitman*, the court stated that: "In certain circumstances, 'evidence of similar accidents occurring at *substantially the same place and under the same or similar*

---

**3.** In pertinent part, the rule provides that "[n]o person shall drive a vehicle ... at a greater speed than will permit the driver to bring his vehicle to a stop within the assured clear distance ahead...." Section 3361 of the Vehicle Code (Code), 75 Pa.C.S. § 3361.

*circumstances* may, in the sound discretion of the trial Judge, be admissible to prove constructive notice of a defective or dangerous condition and the likelihood of injury.' " *Id.,* 324 Pa.Superior Ct. at 180–81, 471 A.2d at 523 (quoting *Stormer v. Alberts Construction Co.,* 401 Pa. 461, 466, 165 A.2d 87, 89 (1960) (emphasis in original)).

Citing two of *Whitman's* progeny,[4] Appellant argues that the plaintiffs in those cases only had to demonstrate the similarity of accidents in a very general way prior to the admission of those accidents for the purpose of proving defendants' notice of a dangerous condition. We disagree with Appellant's interpretation of *Ariondo* and *Hoffmaster.*

One of the main issues in *Ariondo* was whether evidence of prior accidents was inadmissible on the basis that it was confidential. The Department unsuccessfully argued that the police officer's testimony was derived from the Department's indepth investigation of a prior accident and thus inadmissible under Section 3754 of the Code, 75 Pa.C.S. § 3754. Similarity was not even at issue.

In *Hoffmaster,* the trial court in its discretion found that the plaintiff established the required foundation for the admissibility of similar accidents. Indeed, the evidence of prior accidents admitted in *Hoffmaster* showed high similarity to the accident at issue in that case. Here, Appellant made no such offer of proof. Therefore, it is futile to speculate as to the similarity between Appellant's accident and any allegedly similar prior accidents.

■ Also, with regard to the preclusion of evidence of prior accidents, Appellant argues that regardless of whether the trial court correctly granted Appellees' Motions in Limine initially, Appellees' counsel opened the door to the introduction of such evidence in his opening statement and

---

**4.** *Ariondo v. Munsey,* 122 Pa.Commonwealth Ct. 475, 553 A.2d 94, *petition for allowance of appeal granted in part and denied in part,* 523 Pa. 650, 567 A.2d 653–54 (1989); *Hoffmaster v. County of Allegheny,* 121 Pa.Commonwealth Ct. 266, 550 A.2d 1023, *petition for allowance of appeal denied,* 522 Pa. 606, 608, 562 A.2d 828, 829 (1989).

in his cross-examination of a witness. The opening statement of the Township's counsel reads as follows:

> Mr. Trachtman [Appellant's counsel] talked about the township's responsibilities. They have some. Listen carefully, though, as to whether there is a long history of similar accidents, and remember that when the Court goes to charge you at the end of this case as to what the law is and under what circumstances the township can be held liable, see if there is—if he presents evidence of a long history of accidents.

June 1, 1989, N.T. at 29.

■ Under *Whitman* and its progeny, the trial court has discretion to determine the admissibility of evidence of similar accidents. We agree with the trial court and Appellees that the door was always open for Appellant to lay a foundation as to the similarity of prior accidents. The Township's opening statement did not erroneously prejudice Appellant. Appellant simply failed to make any offer of proof.

■ With regard to the cross-examination issue, Appellant's highway design and construction expert, Mr. Robson, testified on direct examination that the curve at issue was defectively designed and constituted a dangerous condition. On cross-examination, counsel for the Department asked Mr. Robson whether a driver could successfully negotiate the curve without any problems, despite the design flaws. Without any objection from Appellant, Mr. Robson answered yes. Thus, we disagree with Appellant that the Department's cross-examination of Mr. Robson opened the door to the introduction of evidence of prior accidents. As we noted above, the door was always open; Appellant neglected to make an offer of proof.

### Scope of Motorcycle Expert's Testimony

■ Appellant's second argument is that the trial court erred in allowing Mr. Enz, the Department's motorcycle expert, to testify outside the scope of his expertise. After a

conference with the trial court in its chambers, the Department amended its offer of proof as to Mr. Enz to include only motorcycles themselves, and their operation and control. Based on Mr. Enz's status as vice president of the Institute for Safety Analysis, his publication of articles in pertinent trade journals and his prior qualifications as a motorcycle expert in other courts, the trial court accepted him as a motorcycle expert, subject to the parameters of the Department's amended offer of proof.[5]

Appellant contends that the trial court permitted Mr. Enz to testify beyond the scope of his qualifications in several instances. First, Appellant argues that the trial court erred in allowing Mr. Enz to testify with regard to motorcycle kinematics and mechanical engineering.[6]

In that regard, Appellant objects and objected to the following question addressed to Mr. Enz:

Q. Sir, could you show the jury what, in your opinion, a motorcycle would do in a situation that Mr. Wicks described yesterday?

N.T. at 815, June 7, 1989 hearing.

Since the question in Appellant's opinion concerned motorcycle kinematics, a subject that was specifically excluded in the Department's offer of proof as to Mr. Enz, Appellant objected to Mr. Enz expressing an opinion to a reasonable degree of engineering certainty. In response, the trial court stated that Mr. Enz, as an expert motorcycle handler, could testify within the area of his expertise.

5. The legal standard under Pennsylvania law for qualification as an expert witness is a reasonable pretention to specialized knowledge. *Gottfried v. American Can Co.*, 339 Pa.Superior Ct. 403, 489 A.2d 222 (1985).

6. Mr. Enz defined motorcycle kinematics as
the movement under normal and side slip, abnormal operational conditions, the movement of the cycle through jumps and jump techniques, ramps, and what's called double ramp, double-kick ramps, which are short ramps where the motorcycle hits twice. And it is the movement and the dynamics, the interactions, of the cycle and the environment during that time.
N.T. at 810, June 7, 1989 hearing.

In his capacity as a motorcycle expert, Mr. Enz went on to describe what a motorcycle would do were it to travel straight instead of rounding the curve of Route 113. Because Mr. Enz's testimony fell within the handling and movement aspects of a motorcycle, we agree with the trial court that Mr. Enz's response was not objectionable.

The second question which Appellant objects and objected to is as follows:

Q. Sir, do you have an opinion as to whether or not a cycle of this type would be able to go up a nine-and-a-half inch embankment, which you measured, at a speed of fifteen miles per hour?

N.T. at 825, June 7, 1989 hearing.

Over Appellant's objection, Mr. Enz answered as follows:

A. It's my opinion that this motorcycle, traveling at a speed of fifteen miles per hour, would be able to readily climb the embankment without any event or handling problems assuming that the cycle was upright and in the initial stage.

N.T. at 825, June 7, 1989 hearing. Again, it seems that Mr. Enz testified within the parameters of the Department's offer of proof.

▮ Thirdly, Appellant argues that Mr. Enz's testimony in response to the Township's cross-examination exceeded the scope of his qualifications. Specifically, Appellant contends that Mr. Enz's responses with regard to Appellant's speed contained improper opinions based on physics and mechanical engineering.

We note, however, that it was Appellant who asked Mr. Enz in cross-examination whether or not he used calculations in order to arrive at Appellant's speed. Therefore, the trial court did not err in permitting Mr. Enz to respond to the Township's question regarding a conclusion as to Appellant's speed at the embankment.

Similarly, the trial court did not err in allowing Mr. Enz to render an opinion as to how Appellant's accident oc-

curred. Again, Appellant himself "opened the door" to that line of questioning when he cross-examined Mr. Enz.

We note that since the admission of expert testimony is at the discretion of the trial court, we will not disturb its decision unless there has been a clear abuse of discretion. *Klyman v. Southeastern Transportation Authority*, 331 Pa.Superior Ct. 172, 480 A.2d 299 (1984). Additionally, we acknowledge that the trial court here properly instructed the jury on what weight to accord expert testimony and how to evaluate it. After reviewing the disputed portions of Mr. Enz's testimony, we disagree with Appellant that Mr. Enz testified beyond the scope of his qualifications. Thus, we find that the trial court did not err in permitting his testimony.

### Eyewitness's Testimony as to Speed

Appellant next argues that the trial court erred in denying his Motion in Limine and thus permitting Mr. Matczak, the eyewitness to the accident, to speculate as to Appellant's speed. As the trial court noted in its August 21, 1990 opinion, "[t]he test for admissibility of lay witness estimations of speed ... depends upon the existence of an overall opportunity for adequate observation, in addition to the witness's prior experience with moving vehicles." *Radogna v. Hester*, 255 Pa.Superior Ct. 517, 521, 388 A.2d 1087, 1089 (1978) (footnote omitted).

In the *Radogna* case, the lay witness, Mr. Long, observed an accident involving a van and an automobile. Mr. Long was sitting in a car parked behind the van. From his side-view mirror, he observed the automobile exiting a circle and entering the street. He then looked forward and saw the van also entering the street. He then looked forward and backward again, and continued to observe the two vehicles up until the time of collision.

The Pennsylvania Superior Court found that Mr. Long's testimony as to the speed of the automobile was reliable and thus admissible because he was an experienced driver

and he observed the automobile at the beginning and end of its relevant travel distance. Here, Mr. Matczak's experience and opportunity to observe were similarly reliable.

Approximately 250–300 feet from the accident scene, Appellant passed Mr. Matczak. Thus, as the driver of the vehicle immediately behind Appellant's motorcycle, Mr. Matczak was an eyewitness to the entire chain of events. Additionally, Mr. Matczak testified that he had driven on Route 113 for twenty-five years, twice per day, commuting to and from work. Thus, we find that the trial court did not err in permitting Mr. Matczak to testify as to Appellant's speed. His overall opportunity for adequate observation was excellent.

Also, the jury performed its function of weighing the conflicting evidence as to speed and rendering a verdict. We will not disturb its conclusion.

### Trial Court's Jury Charge as to "Assured Clear Distance Ahead" Rule

Appellant lastly argues that the trial court erred in charging the jury with respect to the rule. Specifically, he contends that the rule is inapplicable to this case and amounted to a directed verdict on the contributory negligence issue.

The trial court's jury charge with regard to the rule reads as follows:

No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazard then existing, nor at a speed greater than will permit the driver to bring his vehicle to a stop within the assured clear distance ahead.

Consistent with the foregoing, every person shall drive at a safe and appropriate speed when crossing—when approaching and crossing an intersection, *when approaching and going around a curve*, when approaching a hill crest, when traveling upon any narrow or winding

roadway, and when special hazards exist or by reason of highway conditions.

N.T. at 1274–75, June 9, 1989 hearing (emphasis added).

In its opinion denying Appellant's Motion for Post–Trial Relief, the trial court noted that the rule applies to static or essentially static objects. *Mickey v. Ayers*, 336 Pa.Superior Ct. 512, 485 A.2d 1199 (1984). It further stated that a jury charge with regard to the rule was warranted because the embankment and mail boxes constituted fixed objects.

 The applicability of the rule is generally a question of fact for the jury. *Spearing v. Starcher*, 367 Pa.Superior Ct. 22, 532 A.2d 36 (1987). Because there was a curve and two static objects immediately adjacent to the road involved,[7] we agree with the trial court that a foundation for the above-quoted charge existed. Thus, we disagree with Appellant that a basic, fundamental and prejudicial error resulted, which would necessitate a new trial. *E.g., Gilmore v. Marsh*, 424 Pa. 361, 227 A.2d 881 (1967).

For the above reasons, we affirm.

## ORDER

AND NOW, this 26th day of April, 1991, the order of the Montgomery County Court of Common Pleas in the above-captioned matter is hereby affirmed.

---

**7.** Even though the static objects were not directly on the road itself, it has long been the law that "[t]he rule requires that such control be maintained as will enable a driver to stop and *avoid obstructions that fall within his vision.*" *Mickey*, 336 Pa.Superior Ct. at 517–18, 485 A.2d at 1202 (quoting *Unangst v. Whitehouse*, 235 Pa.Superior Ct. 458, 463, 344 A.2d 695, 698 (1975) (emphasis added)).